UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
RAJENDRA PERSAUD and : 
PRAMPATIE PERSAUD,
  :
              Plaintiffs,           Civil Action No.: 12-cv-04891 (ARR)(JMA)
  -against- :

CARIBBEAN AIRLINES LIMITED, :

              Defendant. :
------------------------------------------------------------ x
SHANTI PERSAUD; C.P., a minor, by :
and through her mother and natural
guardian Shanti Persaud; and C.P., a minor, :
by and through her mother and natural       Civil Action No.: 13-cv-00230 (ARR)(JMA)
guardian Shanti Persaud, :

              Plaintiffs, :
  -against-
  :
CARIBBEAN AIRLINES LIMITED,
  :
              Defendant.
------------------------------------------------------------ x

# CARIBBEAN AIRLINES LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## PRELIMINARY STATEMENT

Defendant Caribbean Airlines Limited ("Caribbean Airlines") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(h)(3), as this Court lacks subject matter (treaty) jurisdiction over the action of Plaintiffs Rajendra Persaud and Prampatie Persaud and the action of Shanti Persaud, filed on her own behalf and on behalf of her minor children, C.P. and C.P., arising out of alleged personal injuries sustained during the landing of Caribbean Airlines Flight BW 523 on July 30, 2011.

These actions are governed by an international treaty known as the Warsaw Convention.[1] Article 28 of the Convention specifies four forums in which an action against an air carrier "must be brought" and the United States is not one of those four forums in these actions. Therefore, this Court does not have jurisdiction over Plaintiffs' actions and should grant Caribbean Airlines's motion to dismiss.

## PARTIES

Upon information and belief, Plaintiffs Rajendra Persaud and Prampatie Persaud are a husband and wife who were traveling with their daughter-in-law, Plaintiff Shanti Persaud, and two grandchildren, Plaintiffs C.P. and C.P., on Flight BW 523 (collectively herein "Plaintiffs"). *See* Maggio Aff. at ¶ 11.

Caribbean Airlines is a corporation duly organized and existing under the laws of Trinidad and Tobago and maintains its corporate and operational headquarters in Piarco, Trinidad. *See* Declaration of Nalini Lalla, Esq., dated February 14, 2013 ("Lalla Decl.") at ¶¶ 6-9. Caribbean Airlines is an international airline that transports passengers, baggage and goods

---

[1] Convention for Unification of Certain Rules Relating to International Transportation by Air, signed at Warsaw October 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* 3 Av. L. Rep. (CCH) ¶¶ 27,011-54, attached as Exhibit 11 to the Affidavit of John Maggio, sworn to on February 15, 2013 ("Maggio Aff.").

internationally between various points in the Caribbean, North America, South America and Europe. *Id.* at ¶ 5. Caribbean Airlines operates daily flights to and from Georgetown, Guyana and maintains a place of business in Georgetown. *See id.* at ¶ 10.

## STATEMENT OF FACTS

On July 29, 2011, Plaintiffs traveled on one-way tickets from Fort Lauderdale, Florida to Port of Spain, Trinidad where they boarded Caribbean Airlines Flight BW 523 for continued transportation to Georgetown, Guyana. *See* Lalla Decl. at ¶¶ 11 and 12; *see also* SITA Passenger Revenue Accounting records, attached as Exhibits A and B to the Lalla Decl. Plaintiffs purchased their tickets from Muneshwers Limited Travel Service in Guyana. *See* emails from Plaintiffs' counsel Curtis Miner, Esq., to John Maggio, Esq., attached as Exhibits 7 and 10 to the Maggio Aff.; *see also* Travel Itinerary of Prampatie Persaud and Rajendra Persaud, attached as Exhibit 8 to the Maggio Aff.

While landing at Cheddi Jagan International Airport in Georgetown in the early morning of July 30, the aircraft experienced a runway excursion ("the Incident") allegedly resulting in Plaintiffs' injuries. *See* Maggio Aff. at ¶ 4.

## PROCEDURAL HISTORY

On June 18, 2012, Plaintiffs Rajendra Persaud and Prampatie Persaud commenced an action in the United States District Court for the Southern District of Florida seeking damages for bodily injuries, mental pain and suffering, and monetary losses allegedly resulting from the Incident. The Complaint alleges a single cause of action under the Warsaw Convention for each Plaintiff; specifically, Plaintiffs allege that "[u]nder Article 17 of the Warsaw Convention, Caribbean is strictly liable for proven damages resulting from the accident without regard to its own fault . . . ." *See* Compl. attached to the Maggio Aff. as Exhibit 1, at ¶¶ 18 and 24. On September 28, 2012, the Judicial Panel for Multidistrict Litigation transferred the action and all

actions arising from the Incident to this Court for coordinated or consolidated pretrial proceedings.

On December 14, 2012, Plaintiff Shanti Persaud, individually and on behalf of her minor children, C.P. and C.P., commenced an action in the United States District Court for the Southern District of Florida seeking damages for bodily injuries, mental pain and suffering, and monetary losses allegedly resulting from the Incident. The Complaint alleges a cause of action for negligence and a cause of action under the Warsaw Convention for each Plaintiff. *See* Compl. attached as Exhibit 4 to the Maggio Aff., at ¶¶ 17-49. On January 15, 2013, the Judicial Panel for Multidistrict Litigation transferred that action to this Court.

## SUMMARY OF ARGUMENT

Guyana became a High Contracting Party to the Warsaw Convention in 1935, when it was a colony of the United Kingdom. When Guyana gained independence, it continued to be bound by the Warsaw Convention. Accordingly, Plaintiffs' contracts for transportation provided for "international transportation" as defined in Article 1(2) of the Warsaw Convention. Thus, the Convention provides the exclusive cause of action and remedy for Plaintiffs' claims.

Article 28(1) of the Warsaw Convention specifies four forums in which an action for damages "must be brought." In the cases at bar, none of the forums is located in the United States. Therefore, Plaintiffs cannot maintain these actions in the United States and the motion to dismiss should be granted as a matter of law.

## STANDARD FOR DISMISSAL BASED UPON LACK OF SUBJECT MATTER JURISDICITON

Caribbean Airlines moves to dismiss these actions for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3) because it has already answered the Complaints. *See Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (Townes, D.J.). The same standards apply to motions to dismiss

under Rule 12(b)(1) and Rule 12(h)(3). *See id.*; *see also Richardson v. New York City Transit*, No. 12-CV-5424, 2012 WL 5464176, at *1 (E.D.N.Y. Nov. 8, 2012) (Ross, D.J.).

In responding to a motion to dismiss for lack of subject matter jurisdiction, a plaintiff bears the burden of proving, by a preponderance of the evidence, that subject matter jurisdiction exists. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 164, 170 (2d. Cir. 2008); *Brizard v. Terrell*, No. 111-CV-2274, 2012 WL 3764497, at *3 (E.D.N.Y. Aug. 27, 2012) (Ross, D.J.). While the court must accept as true all material factual allegations in the complaint, the court will not draw inferences favorable to the party asserting jurisdiction and may consider affidavits and other materials beyond the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Reeves v. Wilkins*, No. 10-CV-2766, 2012 WL 3835902, at *4 (E.D.N.Y. Aug. 31, 2012) (Ross, D.J.).[2]

## ARGUMENT

### I

### THE REPUBLIC OF GUYANA IS A HIGH CONTRACTING PARTY TO THE WARSAW CONVENTION

The Warsaw Convention entered into force in the territories of the United Kingdom on March 3, 1935. Declaration of C.A. Nigel Hughes, dated February 1, 2013 ("Hughes Decl.") at ¶ 10; *see also* Carriage by Air (Parties to Convention) Order 1999 (Eng.) at 5, attached as Exhibit B to

---

[2] In multidistrict litigation, "the circuit and district courts have uniformly applied the law of the transferee circuit to issues of federal law." *See In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M21-88, 2005 WL 106936, at *4 (S.D.N.Y. Jan. 18, 2005); *see also* David F. Herr, MULTIDISTRICT LITIGATION MANUAL: PRACTICE BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION at 256 (2007). Accordingly, this memorandum cites primarily to the law of the Second Circuit and New York District Courts; nevertheless, the applicable law in the Second and Eleventh Circuits is identical.

the Hughes Decl. In 1935, the Republic of Guyana ("Guyana") was a colony[3] of the United Kingdom known as "British Guiana." *See* Hughes Decl. at ¶ 4. As a colony of the United Kingdom, Guyana became subject to the terms of the Warsaw Convention in 1935. *See* Hughes Decl. at ¶ 12; Hughes Decl. Ex. B. The government of the United Kingdom reiterated its intent to bind Guyana to the terms of the Warsaw Convention in 1953 when it issued the "Carriage by Air" Act, declaring that all territories of the U.K. would be deemed parties to the Warsaw Convention. *See id.* at ¶ 11; *see also* Carriage by Air (Colonies, Protectorates and Trust Territories) Order 1953 at cxvi, attached as Exhibit C to the Hughes Decl. Guyana gained independence from the United Kingdom in 1966. *See* Hughes Decl. at ¶ 4.

Because the question of whether a treaty remains in force in a newly independent country is political in nature, rather than judicial, courts look to the actions of the governments of the United States and of the newly independent country with respect to the treaty. *See In re Extradition of Sacirbegovic*, No. 03 CR. MISC. 01, 2005 WL 107094, at *10 (S.D.N.Y. Jan. 19, 2005); *Jhirad v. Ferrandina*, 355 F. Supp. 1155, 1159 (S.D.N.Y. 1973), *rev'd on other grounds*, 486 F.2d 442 (2d Cir. 1973); *Terlinden v. Ames*, 184 U.S. 270, 285 (1902) (noting that governmental action with respect to determining the treaty status of a newly independent country is of "controlling importance").

The Court of Appeals for the Eleventh Circuit has ruled on this issue in the context of the Warsaw Convention under circumstances strikingly similar to those presented here. *See Blake v. Am. Airlines*, 245 F.3d 1213 (11th Cir. 2001). In *Blake*, the court analyzed whether Jamaica is a High Contracting Party to the Warsaw Convention for purposes of determining whether the

---

[3] "Colony" is defined as "[a] dependent territorial entity subject to the sovereignty of an independent country, but considered part of that country for purposes of relations with third countries." Black's Law Dictionary 281 (8th ed. 2004). In other words, a colony is a type of territory, and there is no distinction between those terms for purposes of this motion.

Convention governed an action involving round-trip transportation from Jamaica to the United States. *Id.* at 1215-1216. The court examined the conduct of the governments of the United States and Jamaica and noted that the United States "has taken no position on whether Jamaica is a High Contracting Party to the Convention." *Id.* at 1216 (citing TREATIES IN FORCE: A LIST OF TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES IN FORCE ON JANUARY 1, 1999 at 342 (1999) (omitting Jamaica from the list of parties to the Warsaw Convention and stating that "the status of certain states to which the Convention was applicable prior to their becoming independent is not determined")).

Next, the court found that Jamaica's conduct with respect to the Warsaw Convention demonstrated its "clear intent" to be bound by the Convention because, upon gaining independence, Jamaica agreed to accept prior treaty obligations "entered into on its behalf" by the United Kingdom; thus, "Jamaica created a presumption that it intended to be bound by the Warsaw Convention." *Blake*, 245 F.3d at 1216. Furthermore, Jamaica never formally denounced the Convention, even though Article 39(1) of the Convention permits a party to do so. *See id.* Accordingly, the court held that Jamaica is a High Contracting Party to the Warsaw Convention, and dismissed the action on the ground that plaintiff had not commenced the action within the two year limitations period mandated by the Convention. *Id.* (citing Warsaw Convention, Art. 29).

When Guyana gained independence in 1966, the Guyanese Prime Minister gave the following statement to the United Nations regarding Guyana's succession to treaties entered into by the U.K.:

> It is desired that it be presumed that each treaty [entered into by the United Kingdom on behalf of Guyana] has been legally succeeded to by Guyana and that action be based on this presumption until a decision is reached that it should be regarded as having lapsed. Should the Government of Guyana be of the opinion that it has legally succeeded to a treaty and wishes to terminate the operation of the treaty, it will in due course give notice of termination in the terms thereof.

*See* United States Department of State, TREATIES IN FORCE: A LIST OF TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES IN FORCE ON JANUARY 1, 2011 at 115 (2011) (attached as Exhibit 12 to the Maggio Aff.); *see also* Hughes Decl. at ¶ 5. Guyana has never issued a notice of termination or otherwise denounced the Warsaw Convention in any way.

In 1970, Guyana explicitly adopted all laws that had been in existence in Guyana prior to its independence and declared that "[a]ll rights, liabilities and obligations" of the United Kingdom would become the rights, liabilities and obligations of the Guyanese government. *See* Law of Guyana, *Republic Act* Chapter 1:02[3] (Feb. 27, 1970), attached as Exhibit A to the Hughes Decl.; *see also* Hughes Decl. at ¶¶ 7 and 8. Accordingly, Guyana considers itself a party to treaties ratified by the United Kingdom on behalf of Guyana, including the Warsaw Convention. *See* Hughes Decl. at ¶¶ 9, 12 and 13.

As with Jamaica, the United States has taken no position as to Guyana's status as a High Contracting Party to the Warsaw Convention.[4] Notably, both the British and Canadian governments have taken the position that Guyana remains a party to the Warsaw Convention. *See* Hughes Decl. Ex. B; Carriage by Air Act, (Proclamations Certifying Who Are the High Contracting Parties to the Warsaw Convention), S.I. 85-25 (1985) (most recently updated Nov. 18, 2012), attached as Exhibit 13 to the Maggio Aff.

---

[4] TREATIES IN FORCE: A LIST OF TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES IN FORCE ON JANUARY 1, 1999 at 342 (1999). Although the 2011 version of Treaties in Force does not include the language contained in the 1999 version (quoted *supra*) regarding newly independent countries, the Warsaw Convention itself contains identical language: "the status of certain states to which the Convention was applicable prior to their becoming independent is not determined." Warsaw Convention n.1. Moreover, to interpret the omission of this language in the 2011 version of Treaties in Force as evidence of the Department's position that former territories of the United Kingdom are not High Contracting Parties to the Convention would be to apply an unreliable principle of interpretation. *See, e.g.*, *Mizrahi v. Gonzales*, 492 F.3d 156, 174 (2d Cir. 2007) (noting that the maxim *expressio unius est exclusio alterius* may not apply when "it stands on the faulty premise that all possible alternative or supplemental provisions were necessarily considered and rejected by the legislative draftsmen") (internal quotations omitted).

Based upon the foregoing Guyana is a High Contracting Party to the Warsaw Convention.

## II

## PLAINTIFFS' CLAIMS ARE GOVERNED EXCLUSIVELY BY THE WARSAW CONVENTION

Plaintiffs have asserted causes of action under the Warsaw Convention. *See* Maggio Aff. Exs. 1 and 4.[5] Article 1(1) sets forth the scope of the Convention and provides it "shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 1(2) of the Convention defines "international transportation" as:

> any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation . . . are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this Convention.

Where the transportation at issue is international as defined in Article 1 of the Warsaw Convention, the provisions of the Convention exclusively govern the rights and liabilities of the parties and preempt state law causes of action. *See* Warsaw Convention, Art. 24; *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999); *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356-357 (2d Cir. 2002); *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1274 (2d Cir. 1990); *Mateo v. Jetblue Airways Corp.*, 847 F. Supp. 2d 383, 386-387 (E.D.N.Y. 2012) (Block, D.J.).

According to the SITA Passenger Revenue Accounting System and travel itineraries, Plaintiffs were traveling on one-way tickets from Georgetown, Guyana to Fort Lauderdale, Florida

---

[5] Plaintiffs Shanti Persaud, C.P. and C.P. also allege causes of action for negligence, which are preempted by the Warsaw Convention. If this Court determines that the Convention does not apply to Plaintiffs' transportation, Caribbean Airlines reserves its right to seek dismissal of these causes of action as preempted by the Federal Aviation Act of 1958. *See Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011).

with an agreed stop in Port of Spain, Trinidad. *See* Lalla Decl. at ¶¶ 11 and 12; Lalla Decl. Exs. A and B. Accordingly, the transportation at issue was "international transportation" within the meaning of Article 1(2) of the Warsaw Convention because the place of departure (Fort Lauderdale) and place of destination (Georgetown) are situated within the territories of two High Contracting Parties to the Convention.[6]

Therefore, the Warsaw Convention exclusively governs these actions.

## III

## COURTS IN THE UNITED STATES DO NOT HAVE SUBJCT MATTER JURISDICTION OVER THIS ACTION UNDER THE WARSAW CONVENTION

### A. Article 28 Of The Warsaw Convention Provides That An Action For Damages Must Be Brought In One Of Four Enumerated Places

Article 28 of the Warsaw Convention governs subject matter (treaty) jurisdiction and provides that a personal injury action governed by the Convention "must be brought" in one of the following four forums:

    (1) the "domicile of the carrier;"

    (2) the "principal place of business" of the carrier;

    (3) the carrier's "place of business through which the contract has been made," or

    (4) the "place of destination."

Warsaw Convention, Art. 28.

Courts have consistently held that "[i]f the action is not brought in one of these four

---

[6] Plaintiffs have asserted that they were traveling on round-trip tickets from Guyana to Fort Lauderdale. *See also* emails from Plaintiffs' counsel Curtis Miner, Esq., to John Maggio, Esq., attached as Exhibits 8 and 9 to the Maggio Aff. Round-trip transportation from Guyana to the United States would also constitute "international transportation" pursuant to Article 1(2) of the Warsaw Convention because it involves transportation with a place of departure and a place of destination in a single High Contracting Party (Guyana), with an agreed stopping place in another country (the United States and Trinidad and Tobago).

jurisdictions, the court does not have subject matter jurisdiction over it." *See Klos v. LOT Polish Airlines*, 133 F.3d 164, 167 (2d Cir. 1997); *Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798, 802 (2d Cir. 1971); *In re Air Crash near Nantucket Island, Mass., on Oct. 31, 1999*, 340 F. Supp. 2d 240, 242 (E.D.N.Y. 2004) (Block, D.J.); *De Londono v. Aerovias Nacionales de Colombia*, 774 F. Supp. 718, 720 (E.D.N.Y. 1991) (Platt, D.J.)

The mandatory nature of Article 28 is reinforced by Article 32 of the Convention, which prohibits any alteration of the jurisdictional requirements imposed by Article 28. *See Smith*, 452 F.2d at 801. Article 32 of the Warsaw Convention provides, in pertinent part:

> Any clause contained in the contract of carriage and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void.

Warsaw Convention, Art. 32 (emphasis added).

Accordingly, Article 28 provides the exclusive bases for jurisdiction.

**B.    The United States Is Not One Of The Four Forums In Which Claims Against Caribbean Airlines Must Be Brought**

**1.    The Domicile of the Carrier**

It is well established that an air carrier has only one domicile for purposes of Article 28: the place of the carrier's incorporation. *See Smith*, 452 F.2d at 802; *De Londono*, 774 F. Supp. at 720. Caribbean Airlines is incorporated in Trinidad and Tobago. *See* Lalla Decl. at ¶ 6. Accordingly, Caribbean Airlines is a domiciliary of Trinidad and Tobago.

**2.    The Principal Place of Business of the Carrier**

For purposes of the Convention, a carrier has only one principal place of business. *See Smith*, 452 F.2d at 802 n.13; *see also Singh v. Tarom Romanian Air Transport*, 88 F. Supp. 2d 62, 65 (E.D.N.Y. 2000) (Trager, D.J.); *Stanford v. Kuwait Airways Corp.*, 648 F. Supp. 657, 661 (S.D.N.Y. 1986). Courts generally hold that a carrier's principal place of business is the location

-11-

of its corporate and operational headquarters. *See, e.g., Singh*, 88 F. Supp. 2d at 65. Caribbean Airlines maintains its corporate and operational headquarters in Piarco, Trinidad. *See* Lalla Decl. at ¶ 9. Accordingly, Caribbean Airlines's principal place of business is Trinidad and Tobago.

### 3. The Place of Business Through Which the Contract Was Made

The "place of business through which the contract has been made" is the place where the passenger's tickets were purchased and issued. *See Lam v. Aeroflot Russian Int'l Airlines*, 999 F. Supp. 728, 732 (S.D.N.Y. 1998); *see also Stanford*, 648 F. Supp. at 661. In this case, Plaintiffs' purchased their tickets in Guyana, where Caribbean Airlines has a place of business. *See* Maggio Aff. at ¶¶ 13 and 16, Exs. 7 and 10; *see* Lalla Decl. at ¶ 10. Therefore, Guyana is Caribbean Airlines's place of business where the contract for transportation was formed.

### 4. The Place of Destination

For purposes of Article 28, the "place of destination" is determined by reference to the contract of transportation and is the place stated as the ultimate destination of the transportation. See *Klos*, 133 F.3d at 167-168; *Petrire v. Spantax, S.A.*, 756 F.2d 263, 265 (2d Cir. 1985); *Gayda v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir. 1983); *Smith*, 452 F.2d at 802; *Stanford*, 648 F. Supp. at 661. In this case, Plaintiffs were traveling on one-way tickets from Fort Lauderdale, Florida to Georgetown, Guyana via Port of Spain, Trinidad. *See* Lalla Decl. at ¶¶ 11 and 12; Lalla Decl. Exs. A and B; *see also* Maggio Aff. at ¶¶ 14 and 15; Ex. 8 and 9. Accordingly, Guyana was the "place of destination."[7]

Based upon the four forums specified in Article 28 of the Warsaw Convention, Plaintiffs can only maintain an action in either Guyana or Trinidad and Tobago.

---

[7] As discussed in note 6 *supra*, Plaintiffs have asserted that they were traveling on round-trip tickets from Guyana to the United States. In such circumstances, Guyana would still be considered the place of destination, as it is well-settled that for purposes of round-trip transportation under Article 28, the place of departure and place of destination are the same. *See Klos*, 133 F.3d at 167-168; *Petrire*, 756 F.2d at 265; *Singh*, 88 F. Supp. 2d at 65.

## CONCLUSION

No United States court has subject matter (treaty) jurisdiction over Plaintiffs' actions against Caribbean Airlines because the United States is not one of the four forums in which an action arising under the Warsaw Convention must be brought. Therefore, Caribbean Airlines respectfully requests that this Court grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(h)(3) and dismiss the Complaints as a matter of law.

Dated: New York, New York
February 15, 2013

                                        CONDON & FORSYTH LLP

                                        By _____
                                            John Maggio (JM 6814)
                                        jmaggio@condonlaw.com
                                        Times Square Tower
                                        7 Times Square
                                        New York, New York 10036
                                        (212) 490-9100

                                        Attorneys for Defendant
                                        CARIBBEAN AIRLINES LIMITED

*Of counsel:*
Marissa N. Lefland